99 So.2d 310

Rufus W. FONTENOT, Collector of Revenue,
State of Louisiana,

v.

KING LUMBER INDUSTRIES.

No. 43033.

Nov. 12, 1957.

Rehearing Denied Jan. 9, 1958.

George C. Gibson, New Orleans, Levi A. Himes, Chapman L. Sanford, Robert L. Roland, Baton Rouge, for plaintiff-appellant.

Breazeale, Sachse, Wilson & Hebert, Baton Rouge, for defendant-appellee.

FOURNET, Chief Justice.

The Collector of Revenue for the State of Louisiana instituted this summary proceeding against the King Lumber Industries to collect the sum of $18,143.13, together with attorney fees and interest, as tax due on $455,790.75, allegedly realized as income during the taxable year 1951 for which no accounting was made. It prosecutes this appeal from a judgment dismissing the suit.

The defendant, a Mississippi corporation whose business office is now and has always been located in Canton, Mississippi, where it owns and operates three plants (saw mill, creosoting, and dimensional furniture), acquired, during the course of its operations, property in Louisiana, including a hardwood saw mill at St. Francisville where roadway material and oak flooring are turned out. On March 1, 1948, the Mississippi corporation formed a Louisiana corporation known as the King Lumber Industries, Inc., transferring from its books, at book value, all of its assets in Louisiana and receiving in return all of the stock of the new corporation at an equivalent value. The Louisiana property, nevertheless, continued to be operated as previously, through the Canton office, the officers of the two corporations and the overall management personnel, including the comptroller, personnel manager, accountant, and operational superintendent, being identical.[1] All of the business of the Louisiana corporation was also handled through the Canton office. At the end of 1951 the new corporation retransferred to the Mississippi corporation all of the assets owned by it (for all intents and purposes the identical property originally acquired plus the profits made by the Louisiana corporation on which, as shown below, Louisiana income taxes had been paid yearly) at the then value on the Louisiana books, which was $455,970.75 in excess of the book value at the time originally acquired. In exchange the Louisiana corporation secured cancellation of all of its stock, still held in its entirety by the Mississippi corporation. From that time the Louisiana property has continued to be operated through the Canton office by the same officers and personnel under an authorization to do business in Louisiana

1. There were in the Louisiana corporation two officers not members of the Mississippi corporation, but they left the organization in 1950, prior to the taxable year here being considered.

secured by the Mississippi corporation in 1947 and exercised by that corporation from 1947 until the Louisiana corporation was created in 1948. In the meanwhile, the Louisiana corporation paid to the State of Louisiana income taxes based on a profit of $67,233.38 in 1948 (1949 resulted in an operational loss of some $70,000), a profit of $236,276.67 in 1950, and a profit of $244,-569.25 in 1951, the difference in the value of the assets at the time acquired by the Louisiana corporation and the time of the retransfer ($455,790.75), being, according to defendant, these same profits upon which the income taxes were paid, and which actually include some $215,966.33 in accounts receivable that were due the Louisiana corporation, over $166,000 of which were due by the Mississippi corporation.

The state's contention is that the income taxes for 1951 here being sought are due by the Mississippi corporation under RS 47:159(H) which provides: "In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this Chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana."

This contention is untenable, however, for in this same section we find the provision: "Nothing in this Sub-section shall be construed to mean that *gain* or loss *shall be recognized upon the transfer of property in a merger of corporations* where the basis of the property in the hands of the merging corporation is carried forward as the basis in the hands of the continuing corporation," for a mere reading of the facts above outlined clearly establishes the transaction between the two corporations in 1951 was a merger within the meaning and contemplation of the act and that the property in the hands of the Louisiana corporation was carried forward on the same basis in the hands of the Mississippi corporation. (The emphasis has been supplied.)

This is clearly obvious when the provisions of this Chapter in pari materiae are read together, for we find in the definitions given for recognition of a gain or loss for purposes of income tax computation that a reorganization of a corporation is "(1) A merger or consolidation, or (2) A transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred * * *." And "control" is here further defined as the "ownership of at least" 80% of the voting stock and at least 80% of the "total number of shares of all other classes of stock of the corporation." RS 47:138.

Consequently, to compel the Mississippi corporation to pay this additional tax, as here contended, would be to force it to pay a tax on a gain in a merger, consolidation, or re-organization of two corporations, which is specifically excluded from the provisions of RS 47:159(H) relied on by the state.

In view of these specific provisions, reference to the general provisions controlling computation of gains and losses on sales and exchanges of property to be found in RS 47:132–37, also relied on by the state, is unnecessary. Actually, it would appear [2] that from the date of the original enactment of our income tax statute, which was patterned on the federal statute, all officials in charge of collecting this tax have construed the statute in conformity with our present holding, and that as soon as the present position taken by the collector was called to the attention of the legislature [3] it adopted Act 6 of 1957 to obviate any such interpretation.

For the reasons assigned, the judgment appealed from is affirmed.

2. This statement was made by counsel representing defendant during oral argument in court and was not controverted by counsel representing the state.

3. This is the same procedure followed in Congress when the federal courts originally interpreted the federal income tax statute to mean that a corporation liquidating or merging its subsidiary owed a tax under such circumstances. The fact that Louisiana did not, at the same

time, adopt similar legislation to clarify this provision, formerly borrowed from the federal statute, would, ordinarily, seem to imply it had intended no such interpretation; however, as pointed out in the opinion, this is the first time such an interpretation has been placed on the statute that has reached this court, and the legislature, upon being informed thereof, immediately took steps to remedy the situation.